McIlvaine, C. J.
By the statute of February 24, 1846, and the amendments thereto, a chattel mortgage, not accompanied by possession in the mortgagee, is declared absolutely void as against a subsequent purchaser in good faith, unless the mortgage be forthwith deposited with the clerk of the township where the mortgagor resides, if he be a resident of the state, and, if not a resident of the state, with the clerk of the township where the mortgaged property may be at the time of the execution of the mortgage,—save only that “ in all townships in which the office of the recorder of the county is kept, such instrument shall be deposited with him, and he shall perform the duties imposed upon and be entitled to the fees provided for township clerks in this act, and his certificate shall have the same force in evidence.”
Under this statute, and in the absence of other legislation, it would be perfectly clear that the Court of Common Pleas erred in refusing to charge as first requested and in charging as it did, as it will be observed that this statute does not make the office of the county recorder a place of deposit for mortgages executed by residents of the city or village, or on property situate in such city or village, but only for those so made within the township where it is kept. It is contended, however, that by force of other legislation, the office of the recorder of Summit county, although kept in the township of Portage, was the proper depository for chattel mortgages executed by residents of Middlebury township, because the township of Middle-bury was embraced within the corporate limits of the city of Akron, wherein also the recorder’s office was kept.
*72 The theory upon which this contention is based, as we understand it, is, that by the annexation of the territory of Middlebury township to the city, the organization of the township was merged into that of the city, except for the purpose of electing justices of the peace and constables. If this were true, still we can not see how the recorder’s office in Portage township became the proper depository for mortgages executed by residents of the territory formerly embraced in Middlebury township, unless it be further shown that such territory was also annexed to and became part of the township of Portage.
It is not claimed, however, that these townships have been consolidated, or that any change has been made in their boundaries.
But it is not true that the organization of the township of Middlebury was at all affected by the annexation of its territory to the city of Akron. Section 475 of the municipal code provides, “ Whenever the corporate limits of any city or incorporated village become identical with those of any township, then and thereafter the office of township trustees, township treasurer, and township clerk shall be abolished and cease.” But the limits of the city of Akron and Middlebury township did not become identical, and therefore this section did not apply. Hence, if these township offices in the township of Middlebury had an existence down to the date of the annexation of the village of Middlebury to the city of Akron, they exist still, and the office of such clerk was a proper place for the deposit of chattel mortgages. A vacancy in such office, by failure to elect a clerk or otherwise, could not change the place of deposit for such mortgage, prescribed in the statute in relation thereto.
By the annexation of this Middlebury territory to the city of Akron, a proper ease arose for a change of township boundaries by the commissioners of Summit county, as provided in sections 480 and following of the municipal code, but, per force of the statute itself, the annexation effected no such change.
*73 Before the annexation of the incorporated village of Middlebury to the city of Akron, it appears that the corporate limits of the village were identical with those of the township of Middlebury. If this coincidence first occurred before the enactment of the municipal code, May 7, 1869, there was, at the time, no change effected in the organization of the township. Before the municipal code, the township offices of trustee, treasurer, and clerk ceased in certain cases where the limits of the township became identical with those of a city, but no change was effected where its boundaries became identical with those of an incorporated village.
Conceding, however, that per force of section 475 of the municipal code, the office of township clerk in the township of Middlebury was abolished and ceased during the period when the township limits were identical with those of the incorporated village, the duties of the office were not remitted, but were transferred to the clerk of the incorporated village by section 477 of the code. Hence, the office of the clerk of the village became the place for deposit of chattel mortgages for the time being, but when this office ceased to exist by reason of the annexation of the village to the city, it appears to me that the office of township clerk was revived, the limits of the township being no longer identical with those of any municipal corporation.
If these views be correct, there has ever been within the township of Middlebury an office, which is the only place where chattel mortgages executed by residents of the township may be deposited. If they be not correct, then in my. opinion Middlebury township is without a depository for chattel mortgages; for, by no reasonable construction, can the recorder’s office of Summit county be held a proper place for such deposit, except for those mortgages executed by residents of Portage township, or, if the mortgagor be not a resident of the. state, then of those where the mortgaged chattels are situate in said Portage townshij).
"We have been referred to an act supplementary to the .act to regulate the election, etc., of justices of the peace *74 (69 Ohio L. 23), which provides “ that in all cases where-the corporate limits of any city or incorporated village-are no-w or hereafter may become co-extensive with the-limits of any township in which said city or incorporated village is or shall be situate, and in which the township has been or may become merged in any city or incorporated village, the corporate existence of such township shall nevertheless continue for the purposes of electing justices of the peace and constables for such township,” etc.
"Whatever may have been the occasion of this enactment, whether to remove a doubt or to preserve an office-which would otherwise be abolished, it does not, by its-terms, purport to destroy the township organization in any case, or to merge it into that of a city or village; but if it did, and it were competent to do so, still such legislation, although the office of township clerk would be thereby abolished, would not constitute the office of a county recorder a depository for chattel mortgages.
We think the District Court did right in reversing the-judgment of the Common Pleas for error in refusing to charge as requested and in the charge given on this branch of the case.
It is also claimed that the Court of Common Pleas erred in refusing to charge that the chattel mortgage was void by reason of the minority of the mortgagor. This claim is based on the theory that by the subsequent sale of the mortgaged property to the plaintiff below, the mortgagor disaffirmed the mortgage, as he had a right to do, on account of his minority.
There was no error in this refusal. Without stopping to discuss the general disabilities or privileges of infancy, we hold that where an infant purchases a chattel, and at the same time, and in part performance of the contract of purchase, executes a mortgage on the purchased property to secure the payment of the purchase-money, it is not within the privileges of infancy to avoid the security given without also avoiding the purchase. If, in such case, the infant would rescind a part, he must rescind the whole contract, and. *75 thereby restore to his vendor the title acquired by the purchase.
The privilege of infancy may be used as a shield, but not as a sword. And in such case, if the infant sells the mortgaged property, the purchaser takes it subject to the mortgage.

Motion overruled.

"Welch, White, Rex, and Gilmore, JJ., concurred.